IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

PORTLAND DIVISION

NATHAN THOR McVAY,

          Plaintiff,

          v.

JERRY BECKER, et al.,

          Defendants.

3:10-CV-1484-AC

FINDINGS AND RECOMMENDATION

ACOSTA, Magistrate Judge:

      Nathan Thor McVay, an inmate in the custody of the Oregon Department of Corrections ("ODOC") currently housed at the Snake River Correctional Institution ("SRCI"), brings this action *pro se*. In his Complaint, filed against the State of Oregon, ODOC, Dr. Jerry Becker, Max

Williams,[1] Jane Doe, and three John Does [2] (collectively "State"), McVay alleges a civil rights claim under 42 U.S.C. § 1983, for violations of his First, Eighth and Fourteenth Amendments rights, a denial of medical care under Article 1, Section 16, or the Oregon Constitution, and state tort claims for medical negligence, the denial of medical care and fraud. McVay's claims arise from allegations he was not informed of his Hepatitis C Virus ("HCV") status until 2009, despite a conclusive blood test in performed in1987, by Dr. Becker, who at all relevant times was McVay's health care provider at the Oregon State Correctional Institution ("OSCI"). McVay challenges both the denial of adequate treatment for his HCV, and the denial of access to the grievance process to remedy the alleged failure by prison officials to treat his HCV condition. (Compl. ¶¶ 1, 26.) McVay seeks declaratory and injunctive relief as well as money damages.

The parties filed cross-motions for summary judgment on all claims. Specifically, McVay seeks an entry of judgment "on his claims arising from the denial of adequate medical treatment as well as improper care and negligence." (Pl.'s Mem. Summ. J. 1.) Conversely, the State moves for summary judgment against McVay's Complaint in its entirety. The State maintains there were no constitutional violations and, alternatively, the individual defendants are entitled to qualified immunity on McVay's constitutional claims. Additionally, the State contends the Eleventh Amendment bars McVay's state tort claims against ODOC, a state agency; and all of the alleged

---

[1]McVay concedes Max Williams took no individual or personal action in the events alleged, as required for liability under § 1983, and therefore Williams must be dismissed from this action. (Pl.'s [Opp.] Summ. J. 20 ("Max Williams should be dismissed plaintiff concedes. After weighing the issues plaintiff believes Max Williams had no prior knowledge of the violation of plaintiff's Eighth [A]mendment rights which occurred in 1987.").)

[2]All individual defendants, including Becker and Williams, are sued in both their official and personal capacities.

2 – FINDINGS AND RECOMMENDATION

conduct against the individual defendants is beyond the relevant limitations period. For the reasons that follow, McVay's Motion for Summary Judgment should be denied; and defendants' Motion for Summary Judgment should be granted.

*Background*

McVay is an inmate in the custody of ODOC, and is infected with HCV. (Compl. ¶ 5.) During the relevant time period, McVay was housed at OSCI, and Dr. Becker was his health care provider. (Compl. ¶¶ 1, 5, 7.) McVay alleges that in 1987 Dr. Becker administered a blood test and, based upon the results, determined McVay was infected with HCV. (Pl's. Statement Undisputed Facts ¶ 1.) McVay further claims Dr. Becker failed to inform him of the HCV results and, correspondingly, failed to treat McVay "in accord with existing medical standard[s] of care" for a period of over twenty years. (Pl.'s Statement Undisputed Facts ¶ 3.)

The State maintains that on April 29, 2009, McVay self-reported his HCV status during the intake process into ODOC custody.[3] (Steve Shelton M.D. Decl. ¶ 40, Nov. 22, 2011.) McVay denies he self-reported his HCV status in 2009. (Nathan Thor McVay Second Decl. ¶ 2, Dec. 6, 2011.) Rather, McVay alleges he learned of his HCV diagnosis in March 2010, when Dr. Garth Gulick, his medical provider at SRCI, informed him he was infected with HCV. (Compl. ¶ 22; Nathan McVay Decl. ¶ 2, June 7, 2011.) McVay claims that until 2010, he "was never advi[s]ed nor monitored by defendants about his liver enzymes level or ever treated for HCV despite the existence of the HCV policy since June 3, 1999." (Compl. ¶ 23; McVay Decl. ¶ 3.)

---

[3]McVay has been in and out of ODOC custody between 1987 and the present. From 2009 until the present, McVay has been housed at Snake River Correctional Institute ("SRCI"). (Compl. ¶ 23.)

3 -- FINDINGS AND RECOMMENDATION

On June 14, 2010, McVay sent a "kyte" to Judy Gilmore, Assistant Superintendent for Transitional Services to inquire why ODOC failed to inform him he was infected with HCV since 1987. McVay explains Gilmore forwarded the kyte to S. Hodge, Health Services Manager. In response to the June 14th kyte, Hodge wrote "I do not see a test from 1987 in your medical file. I do see that Dr. Gulick has ordered a liver biopsy which has already been performed. You are scheduled to see him to discuss the results and treatment if appropriate." (McVay Decl. ¶ 5; Ex. 8.)

On June 24, 2010, McVay filed a grievance to determine why ODOC failed to inform him of his HCV status, beginning in 1987, and why it provided no medical treatment. (McVay Decl. ¶ 4; Ex. 4A.) Four days later, on June 28, 2010. McVay received a notice from Teresa Hicks, Grievance Coordinator, informing him the grievance had been closed because McVay filed a tort claim. (McVay Decl. ¶ 7; Ex. 4B.) On August 5, 2010, McVay sent a kyte to Hicks in an attempt to "reopen" the grievance process and to notify her he had filed only a Notice of Tort Claim and not a complaint with any court. (McVay Decl. ¶ 7.) McVay alleges he was informed that if he attempted to reopen his grievance he would receive the same response. (McVay Decl. ¶ 7.)

Finally, on July 12, 2010, McVay sent a kyte to Hodge asking for an explanation why the ODOC medical staff "neglected to notify" him of the HCV results, despite the 1987 blood test that clearly shows he was infected. (McVay Decl. ¶ 6; Ex. 9.) Hodge responded "I have no way of knowing what caused the delay or if it was DOC's error – or if the labs weren't returned – or what. I am sorry I can't provide you with an explanation." (McVay Decl. ¶ 6; Ex. 9.)

The State explains that ODOC follows HCV Treatment Guidelines created by an independent Medical Review Panel as a result of a class action settlement overseen by a special master. *See Anstett et al. v. State of Oregon et al.*, CV No 01-1659-BR (D. Or. 2007); (Shelton Decl. ¶ 18, Ex.

1.) These guidelines form the basis of ODOC's HCV treatment protocol. (Shelton Decl. ¶ 18, Ex. 1.) In 2009, the American Association for the Study of Liver Diseases ("AASLD"), in association with the Infectious Disease Society of American and the American College of Gastroenterology published updated evidence-based clinical practice guidelines for the diagnosis, management, and treatment of HCV. (Shelton Decl. ¶ 19.) In early 2010, ODOC Health Services revised and updated the 2006 HCV Treatment Guidelines to reflect the new 2009 Guidelines published by the AASLD. (Shelton Decl. ¶ 19.).

After McVay allegedly reported his HCV status in 2009, per the ODOC HCV Treatment Guidelines, a lab test was ordered to evaluate genotype and whether the virus would be responsive to treatment. (Shelton Decl. ¶ 44, Ex. 2.) Lab tests indicate McVay has a genotype of 3a, which responds well to treatment. (Shelton Decl. ¶ 44) Accordingly, and pursuant to ODOC HCV Treatment Guidelines, the Therapeutic Level of Care committee approved a liver biopsy to determine the histologic state of McVay's liver and whether treatment would be appropriate. (Shelton Decl. ¶ 45.) The biopsy indicated McVay's virus was at a Grade 1, Stage 1 level of fibrosis, indicating the virus is present in his liver but not doing any significant damage. (Shelton Decl. ¶ 47.) Under ODOC HCV Treatment Guidelines, and consistent with National Guidelines, the viral eradication treatment is not advised for this early stage of HCV. (Shelton Decl. ¶ 47.) Rather, the treatment protocol is to monitor the patient to determine whether the virus is progressive. (Shelton Decl. ¶¶ 14, 47.)

McVay is being monitored and, in fact, he received lab tests in March, July and August 2011, which showed normal liver enzymes and function, normal blood counts and normal platelet counts. (Shelton Decl. ¶ 49.) As these tests and the biopsy reveal, McVay currently is not experiencing any

adverse effects from HCV, but he will continue to be monitored to evaluate whether the HCV progresses and he becomes a candidate for viral eradication treatment. (Shelton Decl. ¶¶ 48, 51.)

*Legal Standard*

Summary judgment is appropriate "if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." FED R. CIV. P. 56(a). The party seeking summary judgment bears the initial burden of demonstrating no genuine dispute of material fact exists. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). All material facts are resolved in a light most favorable to the nonmoving party. *Id.* at 331. The court must accept all evidence and make all inferences in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

*Discussion*

I.    42 U.S.C. § 1983 Claims

As a threshold matter, the court notes McVay's § 1983 claims are against "all Defendants" and he seeks to recover economic and noneconomic damages for the harm caused by the alleged constitutional violations. (Compl. ¶¶ 38, 40.) McVay's § 1983 claim against the State, by and through ODOC, must be dismissed because it seeks monetary relief from defendants who are immune from such relief. The State of Oregon, and its dependent agencies, are immune from § 1983 damages claims under the Eleventh Amendment. *See Will v. Michigan Dept. of State Police*, 491 U.S. 58, 70 (1989); *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 100-01 (1984). Accordingly, summary judgment should be granted in favor of the State and ODOC on McVay's § 1983 action. McVay's constitutional claims may proceed only against the individual defendants.

A.      *Eighth Amendment and Fourteenth Amendment*

In his First Claim for Relief, McVay alleges the failure to timely inform him of his HCV status and provide timely and adequate treatment for his serious medical condition constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments[4] of the U.S. Constitution, and Article I, Section 16 or the Oregon Constitution.[5] Similarly, in this Third Claim for Relief, McVay alleges Dr. Becker and the Jane and John Doe defendants violated the Eighth Amendment by "improperly delaying and denying" him "access to medical care" as enumerated. (Compl. ¶ 47.)

The State insists it did not violate McVay's Eighth Amendment rights because McVay does not have a serious medical need and he is unable to establish that any of the individual defendants acted with the requisite culpable state of mind. Alternatively, the State insists the individual defendants are entitled to qualified immunity for their conduct related to McVay's HCV status.

McVay brings his Eighth Amendment claim under 42 U.S.C. § 1983. To analyze a section 1983 claim against a government official the court should proceed in a two-part analysis. First, the

---

[4]At times, McVay alleges the denial of medical care violated the Eight and Fourteenth Amendments. (Compl. ¶¶ 1, 38, 47.) The Eighth and Fourteenth Amendments both guarantee inmates receive constitutionally adequate medical care. A prison official's deliberate indifference to a substantial risk of serious harm to an inmate that violates the Eighth Amendment, will necessarily violate the Fourteenth Amendment as well. *See Conn v. City of Reno*, 591 F.3d 1081, 1094 (9th Cir. 2010), *judgment vacated on other grounds by*, ___ U.S. ___, 131 S. Ct. 1812 (2011).

[5]No private right of action for damages exists for violations of the Oregon Constitution. *See, e.g., Hunter v. Eugene*, 309 Or. 298, 304, 787 P.2d 881 (1990). Rather, the Oregon Tort Claims Act is the exclusive remedy for violations of the Oregon Constitution. *See Webber v. First Student, Inc.*, CV No. 11-3032-CL, 2011 WL 3489882, *6 (D. Or. July 12, 2011), Thus, McVay's claim brought directly under the Oregon Constitution should be dismissed. *See, e.g., Standish v. Woods*, CV No. 03–933–AS, 2004 WL 1379466, at *2 (D. Or. May 10, 2004); *Juran v. Independence Or. Cent. Sch. Dist. 13J*, 898 F. Supp. 728, 730 (D. Or. 1995).

7 – FINDINGS AND RECOMMENDATION

court must view the claimed constitutional violation in the light most favorable to the injured party and inquire whether the facts alleged show the official's conduct violated a constitutional right. *Saucier v. Katz,* 533 U.S. 194, 201 (2001), *abrogated in part on other grounds by Pearson v. Callahan,* 555 U.S. 223, 129 S.Ct. 808, 818 (2009). If the court finds there was no constitutional violation, there is no further inquiry and judgment is entered for the government official. If, however, the court determines there was a violation, it must proceed to the question of qualified immunity. Government actors are protected by qualified immunity, which is "an immunity from suit rather than a mere defense to liability." *Pearson,* 129 S.Ct. at 815. When an official asserts immunity, the court must dismiss the case unless that individual knew his conduct was "clearly unlawful." *Saucier,* 533 U.S. at 202; *see also Pearson,* 129 S.Ct. at 816 ("the court must decide whether the right at issue was 'clearly established' at the time of defendant's alleged misconduct"). Courts may determine which part of the analysis to address first. *See Pearson,* 129 S.Ct. at 818 ("while the sequence set forth [in *Saucier* ] is often appropriate, it should no longer be regarded as mandatory"). In this case, the court will determine first whether a constitutional violation occurred.

The Eighth Amendment prohibits the infliction of "cruel and unusual punishments." U.S. CONST. AMEND. VIII. The "unnecessary and wanton infliction of pain" constitutes cruel and unusual punishment prohibited by the United States Constitution. *Whitley v. Albers,* 475 U.S. 312, 319 (1986); *see also Ingraham v. Wright,* 430 U.S. 651, 670 (1977); *Estelle v. Gamble,* 429 U.S. 97, 105-06 (1976). Long ago, the Supreme Court held that prison officials' deliberate indifference to serious medical needs of prisoners did constitute "unnecessary and wanton infliction of pain." *Estelle,* 429 U.S. at 104. It is important to note, however, that the Court subsequently determined that "[i]t is obduracy and wantonness, not inadvertence or error in good faith, that characterize the

conduct prohibited by the Cruel and Unusual Punishments Clause, whether that conduct occurs in connection with establishing conditions of confinement, supplying medical needs, or restoring official control over a tumultuous cellblock." *Whitley,* 475 U.S. at 319.

A prisoner's claim of inadequate medical care does not constitute cruel and unusual punishment unless the mistreatment rises to the level of "deliberate indifference to serious medical needs." *Estelle,* 429 U.S. at 104. Thus, to prevail on an Eighth Amendment violation against prison officials, McVay must establish the individual defendants showed deliberate indifference to his serious medical needs. *Estelle,* 429 U.S. at 104. Further, the "deliberate indifference" standard involves an objective and a subjective prong. First, the alleged deprivation must be, in objective terms, "sufficiently serious." *Farmer v. Brennan,* 511 U.S. 825, 834 (1994). Second, in subjective terms, the prison official must act with a "sufficiently culpable state of mind," which entails more than mere negligence, but less than conduct undertaken for the very purpose of causing harm. *Id.* at 837.

The State challenges both prongs of McVay's Eighth Amendment claim. As a threshold matter, the State insists that despite his HCV status McVay does not suffer from a serious medical condition and, consequently, there can be no "sufficiently serious" deprivation. Additionally, it argues even if the court finds McVay's "early stage HCV" qualifies as a serious medical need, the individual defendants were not deliberately indifferent to his condition. Thus, to determine whether McVay was subjected to cruel and unusual punishment such that his Eight Amendment rights were violated the court must first make an objective determination whether McVay has a serious medical need. Next the court will consider whether, subjectively, McVay has demonstrated the individual

defendants acted with a culpable state of mind in relation to his HCV status. *See Wilson v. Seiter*, 501 U.S. 294, 298-99 (1991); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).

### 1. Serious Medical Need

A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.' " *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991) (*quoting Estelle*, 429 U.S. at 104), *overruled on other grounds by WMX Techs., Inc. v. Miller*, 104 F.3d 1133 (9th Cir.1997) (*en banc*). Indications of a serious medical need include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain. *Id.* at 1059–60. By establishing the existence of a serious medical need, a prisoner satisfies the objective requirement for proving an Eighth Amendment violation. *Farmer*, 511 U.S. at 834.

The State maintains McVay's early-stage HCV has no effect on his daily activities and is not causing him chronic or substantial pain. (Defs.' Mem. Summ. J. 6.) Additionally, the State contends a "reasonable doctor" would not presently recommend treating McVay's HCV. (Defs.' Mem. Summ. J. 6.) Accordingly, the State concludes McVay does not have a serious medical need under the standards set forth by the Ninth Circuit in *McGuckin*.

The court disagrees. There is no doubt HCV is a serious medical condition that can lead to serious health consequences in a portion of those infected. *See also National Digestive Diseases Information Clearinghouse*, http://digestive.niddk.nih.gov/diseases/pubs/hepc_ez/index.aspx (last visited March 8, 2012). The State's evidence reveals that 80% of people infected with HCV develop chronic HCV infection, which is the case with McVay. (Shelton Decl. ¶¶ 12, 50.) Based upon the

evidence submitted by the State, it appears chronic HCV varies in its severity and prognosis, *i.e.*, some patients may never have symptoms of liver damage, others may have the disease for many years before developing problems, and some will develop "significant health concerns," including cirrhosis. (Shelton Decl. ¶¶ 12-13.)  The fact McVay's condition is not presently "doing any significant damage" to his liver and interferon and ribavirin[6] are not currently recommended under either National or ODOC Treatment Guidelines (Shelton Decl ¶ 47), does not diminish the objectively serious nature of McVay's disease nor the court mandated need for ongoing medical care of prisoners infected with HCV. *See Anstett v. State*, CV No. 01-1619-BR (Order) (D. Or. Aug. 7, 2006).  Accordingly, McVay has satisfied the objective component of the Eighth Amendment analysis; his HCV status presents a serious medical need.

2.  Deliberate Indifference

To establish the subjective component of deliberate indifference for Eighth Amendment liability, McVay must demonstrate that individual defendants acted with a "sufficiently culpable state of mind." *Farmer*, 511 U.S. at 834. Eighth Amendment liability requires "more than ordinary lack of due care for the prisoner's interests or safety." *Whitley*, 475 U.S. at 319. In medical mistreatment cases, the subjective state of mind requirement is somewhere between negligence and acts "for the very purpose of causing harm." *Farmer*, 511 U.S. at 835–36. As further explained by the Court, to establish the subjective component, an inmate must demonstrate that jail officials were (1) aware of a substantial risk of harm and (2) purposely disregarded the risk to the inmate's health. *Id.* at 837–38.

---

[6]Interferon and ribavirin are two drugs used in treating HCV.

The State insists the individual defendants have not been indifferent to McVay's "early-stage HCV" and, in support, the State chronicles the treatment he has received since his HCV diagnosis in March 2010. However, McVay does not challenge the medical attention and treatment he has received since March 2010. (Pl.'s Ans. Mot. Summ. J. 12 ("Defendants also are relying on what is being done now. This not the issue and never has been."); Pl.'s Mem. Summ. J. 2 ("[P]laintiff filed a grievance complaining about the department's failure to provide him with adequate medical care *in a timely manner (before March 2009)* (emphasis added))). Rather, McVay's claim for an Eight Amendment violation are grounded in Dr. Becker's failure to follow-up on the 1987 blood results, which revealed McVay had elevated liver enzymes, "to determine if [McVay] had a serious medical condition." (Pl.'s Ans. Mot. Summ. J. 6; Pl.'s Statement Undisputed Facts ¶¶ 3-4 ("Dr. Becker failed to treat Plaintiff in accord with existing medical standard of care by failing to order necessary diagnostic tests. Failed to follow acceptable medical protocols in treating Plaintiff's life threatening disorder, and failed to obtain any level of informed consent from Plaintiff for treatment or non-treatment for a period of over twenty years. The ODOC Medical staff as well as employees continued this level of deliberate indifference for a period of over 22 years."); Compl. ¶ 30 ("Defendants have acted with conscious disregard of the substantial risk of serious harm to the health and life of Plaintiff, caused by their failure to inform Plaintiff that he was infected with HCV over 22 years ago, and their failure to timely provide treatment for Plaintiff's HCV infection."); Compl. ¶ 39 ("Defendants failure to timely inform and provide treatment to Plaintiff or HCV infection . . . caused Plaintiff irreparable harm to his health and well being. . . .").) Simply put, McVay challenges Dr. Becker's failure to investigate the cause of the elevated liver enzymes back in 1987, which

disregarded the risk faced by McVay and resulted in a twenty-year delay in McVay receiving treatment for his HCV infection and, thus, exacerbated his present condition.

The only medical evidence presented by McVay, from 1987, are lab results showing elevated liver enzymes. (McVay Decl. Ex. 2.) There is no other evidence in the record of any symptoms or illness or even discomfort suffered by McVay at that time. The testimony from Dr. Shelton is that: "Elevated liver enzymes indicate an inflammation in the liver that can be brought on by a number of causes including medications and alcohol and may be temporary. Elevated liver enzymes do not necessarily signal a chronic or serious liver problem." (Shelton Decl. ¶ 39.)  In fact, McVay's lab results from March and December 2010 indicate normal liver enzymes; and, McVay's lab test results from March, July and August 2011, show normal liver enzymes and function, normal blood counts and normal platelet counts. (Shelton Decl. ¶¶ 39, 49, Ex. 4 at 24-29.) Nor was a diagnosis of HCV withheld from McVay in 1987. The undisputed evidence shows there was no HCV test available until many years later. (Shelton Decl. ¶¶ 9, 22, 39). Thus, McVay cannot establish that his elevated liver enzymes, in 1987, were caused by HCV. More importantly here, McVay is unable to create an inference that Dr. Becker was aware, or should have been aware, that McVay may have contracted HCV, based upon solely upon the 1987 lab results.

With respect to McVay's allegations of delayed treatment, even assuming McVay had contracted HCV in 1987, and assuming again that a diagnosis could have been achieved with reliable testing, there was no treatment presently available for McVay's condition.  Once again, the undisputed evidence shows that testing for the HCV antibody has been widely available only since 1997, and treatment for those with chronic HCV has been available only since 1998. (Shelton Decl. ¶ 22.) Moreover, McVay's chronic HCV does not presently meet  the criteria for viral eradication

13 – FINDINGS AND RECOMMENDATION

medication under either the ODOC 2010 HCV or National Treatment Guidelines.[7] (Shelton Decl. ¶¶ 47, 50.)  Further, McVay has failed to present any evidence that Dr. Becker strayed from established medical protocol in 1987 in his treatment of McVay.  As such, it is unclear how or what treatment may have been delayed or denied to McVay by Dr. Becker in 1987.

In sum, the question for the court is whether Dr. Becker's medical decision – that a single blood test in 1987, showing only elevated liver enzymes in an otherwise asymptomatic patient, was not clinically significant – can support a claim for deliberate indifference to McVay's serious medical need?  Clearly, it cannot as McVay is unable to show Dr. Becker was aware of a substantial risk of harm created by the elevated liver enzymes lab results and that he purposely disregarded the risk to McVay's health.  *Farmer*, at 837–38; *see also Estelle*, 429 U.S. at 107 ("[T]he question whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.").  Further, McVay is unable to show he suffered any harm as a result of Dr. Becker's actions or omissions in 1987.  *See, e.g., Jett v. Penner*, 439 F.3d 1091, 1096 (9th Cir. 2006) (prisoner must show a purposeful act or a failure to

---

[7]Specifically, the results of McVay's May 2010, liver biopsy show:

Grade 1 virus inflammation on a scale of 0-4 with 1 being a low grade of virus inflammation present. The biopsy also showed Stage 1 out of 0-4 stages, with 1 being a very low grade of fibrosis otherwise know as scar tissue.  These are indications that the virus is present in his liver but is not doing any significant damage.  ODOC is in line with national guidelines and recommendations in not recommending interferon and ribavirin for this low stage of fibrosis (scar tissue).

The Therapeutic Level of Care committee's recommendation that McVay under go a recheck in four to five years is consistent with the ODOC 2010 HCV Treatment Guidelines.  (Shelton Decl. ¶¶ 47-48.)

respond *and* harm caused by the indifference). The court finds, as a matter of law, that the individual defendants did not act with deliberate indifference toward McVay's serious medical need in violation of the Eighth Amendment. Similarly, in the absence of deliberate indifference toward McVay by prison officials, McVay's Fourteenth Amendment claims must fail as well. Accordingly, the State's request for an entry of judgment against McVay's Eighth and Fourteenth Amendment claims should be granted.[8]

B.    *First and Fourteenth Amendments*

In paragraph one of his Complaint, McVay alleges he was denied access to the grievance process in violation of the First and Fourteenth Amendments. (Compl. ¶ 1.) A prisoner has no substantive right to a prison grievance system, and due process claims based upon the denial of or interference with a prisoner's access to a prison grievance system are not cognizable. *See, e.g. Ramirez v. Galaza*, 334 F.3d 850, 860 (9th Cir. 2003) (*citing Mann v. Adams*, 855 F.2d 639, 640 (9th Cir. 1988). Nor has McVay demonstrated that the alleged failure to process his grievance for claims of indifference to his medical needs imposed an "atypical and significant hardship" on him or affected the degree of restraint imposed or duration of McVay's sentence. Thus, McVay's grievance claim "lacks the necessary constitutional foundation" to state a claim under 42 U.S.C. § 1983. *Id.*; *Jones v. Williams*, CV No. 09-29-TC, 2011 WL 7114002 (D. Or. Oct. 28, 2011). Accordingly, the State's request for an entry of judgment against McVay's First and Fourteenth Amendment claims should be granted.

---

[8]Because the court has determined the individual defendants did not act with deliberate indifference to McVay, and summary judgment is warranted against McVay's Eighth Amendment claims, it need not reach the other grounds for dismissal, *i.e.*, statute of limitations or qualified immunity, by the State.

15 – FINDINGS AND RECOMMENDATION

II.    State Tort Claims

McVay's remaining claims allege violations of state tort law – medical negligence, denial of adequate medical care and fraud – against Dr. Becker and the Jane and John Doe defendants. (Compl. ¶ 1.) The State moves to dismiss all of the state law claims on the ground McVay failed to comply with the requirements of the Oregon Tort Claims Act ("OTCA"). At the time the McVay filed this action,[9] the Oregon Tort Claims Act provided: "[t]he sole cause of action for any tort of officers, employees or agents of a public body acting within the scope of their employment or duties . . . shall be an action against the public body only." OR. REV. STAT. § 30.265(1). Further, "[i]f an action or suit is filed against an officer, employee or agent of a public body, on appropriate motion the public body shall be substituted as the only defendant." *Id.* Thus, as long as an employee was acting within the course and scope of his employment at the time the allegedly tortious conduct occurred, the only proper claim is against the public body itself. "For an act to fall within the scope of employment, it must be of a kind which the employee was hired to perform, must have occurred within authorized time and space, and the employee must have been motivated, at least in part, by a purpose to serve [the employer]." *Hasse v. Eugene*, 85 Or. App. 107, 110–111, 735 P.2d 1258 (1987).

---

[9]The Oregon Tort Claims Act was amended by the Oregon Legislature during its 2011 regular session. As amended, the Act provides that under certain circumstances, based upon the amount of damages alleged in an action, a plaintiff may bring the action against an individual officer, employee, or agent, as well as the public body. The amendment was signed into law by the Governor on June 7, 2011, with an effective date of January 1, 2012. *See* S.B. 397, 2011 Or. Legis. 270 (2011). McVay's Complaint was filed in 2010, and he does not allege any specific amount of damages. Rather, he seeks economic, noneconomic and punitive damages "in an amount to be fully determined appropriate by the court at trial." (Compl. ¶ 50.)

In this case, all of the individual defendants are sued in their "individual and official capacities" for actions taken as ODOC employees. (Compl. ¶¶ 6-7, 9-12, p. 13.) There are no allegations in McVay's Complaint that the actions or omissions of any of the individual defendants fell outside their scope of employment. McVay's Complaint seeks an unspecified amount of monetary damages "to be fully determined appropriate by the court at trial." (Compl. p. 13, ¶¶ 40, 45, 46, 48-50.) Thus, under the circumstances here, the State, through ODOC, is the only proper defendant for McVay's remaining state law tort claims. *See, e.g., Silver v. Mitchell*, No. CV 11-92-HZ, 2011 WL 3585396, *at 6 (D. Or. Aug. 15, 2011); *Comfort v. Jackson County*, No. CV 09-3060-CL, 2010 WL 2817183, at *3-5 (D. Or. July 16, 2010) ("[R]elief for common law claims against individuals must be brought under the OTCA and not common law."); *Hadley v. City of Beaverton*, No. CV 09-022-ST, 2010 WL 1257609, at *13 (D. Or. Feb. 16, 2010) ("As long as an employee was acting within the course and scope of his employment at the time the allegedly tortious conduct occurred, the only proper claim is against the public body itself."). Accordingly, McVay's state law tort claims against the individual defendants should be dismissed.

By applying the strictures of the OTCA, the State must replace the individual defendants – Dr. Becker, Jane Doe and John Does I-III – for McVay's state tort claims. The State contends, however, the Eleventh Amendment bars McVay's state tort claims against the State in federal court. The Eleventh Amendment provides the judicial power of the United States "shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI. This provision is "a real limitation on a federal court's federal-question jurisdiction," *Idaho v. Coeur d'Alene Tribe*, 521 U.S. 261, 270 (1997), it bars a citizen from bringing suit in federal court against

the citizen's own state regardless of the relief sought. *Alabama v. Pugh*, 438 U.S. 781, 782 (1978). Eleventh Amendment immunity is applicable to federal and supplemental state law claims. *Pennhurst State Sch. & Hosp.*, 465 U.S. at 120 ("[N]either pendent jurisdiction nor any other basis of jurisdiction may override the Eleventh Amendment.").

A state's Eleventh Amendment immunity may be waived. *Actmedia, Inc. v. Stroh*, 830 F.2d 957 (9th Cir.1986). A general waiver of sovereign immunity, although sufficient to subject a state to suit in its own courts, is insufficient to waive a state's Eleventh Amendment immunity from suits in federal court. *See Astadero State Hosp. v. Scanlon*, 473 U.S. 234, 241 (1985); *Pennhurst*, 465 U.S. at 99. Rather, a state must expressly waives its immunity and consent to suit in federal court to overcome the Eleventh Amendment bar. *Atascadero State Hosp.*, 473 U.S. at 241. Although it contains a general waiver of immunity, the OTCA does not contain an express consent to suit in federal court. In fact, the test for finding a waiver is stringent. *Id.*. The waiver or consent to jurisdiction must be unequivocally expressed and must be stated by the most express language or by such overwhelming implications in the text as to leave no room for any other reasonable construction. *Id.*

In its Answer to McVay's Complaint, the State asserted Eleventh Amendment immunity from suit in federal court. (Answer ¶ 12; Defs.' Mem. Summ. J. 11 ("Neither the State of Oregon nor ODOC have consented to suit and should be dismissed.").) Moreover, McVay concedes the State and ODOC are immune from suit in federal court. (Pl.'s Reply Affirmative Defenses 5; (Pl.'s [Opp.] Summ. J. 20 ("Plaintiff [] admits that the State of Oregon Dept. of Corrections is immune from suits in federal court. . . .").)

18 – FINDINGS AND RECOMMENDATION

In sum, any state law claims against the individual defendants are premised on events occurring within the scope of employment with ODOC, and may be asserted (if at all) only against the State, through ODOC, pursuant to the Oregon Tort Claims Act, OR. REV. STAT. §§ 30.265 and 30.275. The State having timely asserted its Eleventh Amendment privilege, and no showing having been made of waiver or abrogation of such right as to the matters at issue, those state law claims may not be heard in federal court and should be dismissed, without prejudice.

### *Recommendation*

Based upon the foregoing, McVay's Motion for Summary Judgment (doc. #34) should be DENIED. The State's Motion for Summary Judgment (doc. #61) should be GRANTED. Accordingly, all of McVay's claims pursuant to 42 U.S.C. § 1983, should be DISMISSED, with prejudice; and McVay's state law tort claims should be DISMISSED, without prejudice.

DATED this 21st day of March 2012

_____
John V. Acosta
United States Magistrate Judge

### *Scheduling Order*

The above Findings and Recommendation will be referred to a United States District Judge for review. Objections, if any, are due April 5, 2012. If no objections are filed, review of the Findings and Recommendation will go under advisement on that date.

If objections are filed, a response to the objections is due fourteen days after the date the objections are filed and the review of the Findings and Recommendation will go under advisement on that date.

19 – FINDINGS AND RECOMMENDATION